UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:12-cr-00108-FDW-DSC

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| vs. | ) | |
| | ) | ORDER |
| JUSTIN KELLY | ) | |
| Defendant. | ) | |

THIS MATTER is before the Court on Defendant's "Motion in Limine" (Doc. No. 20). Defendant's motion seeks to preclude the Government from introducing certain evidence, including: (1) evidence that Defendant possessed firearms on October 14, 2011; that said firearms traveled in interstate commerce; or that Defendant signed the ATF Form 4473 at issue; (2) evidence outside Defendant's prior record of conviction for assault on a female to show that the conviction has an element of us or attempted use of physical force or the threatened use of a deadly weapon; and (3) the incident/investigation report from October 23, 2000. Although couched as a motion in limine, resolution of the second section of Defendant's motion in Defendant's favor would be dispositive. Therefore, the Court construes that portion of Defendant's motion as a motion to dismiss Count One of the Indictment. For the reasons that follow, the Court GRANTS Defendant's motion to dismiss and denies as moot all other portions of Defendant's motion.

**I. BACKGROUND**

On January 14, 2001, following a bench trial in Cabarrus County, North Carolina, Defendant was found guilty of assault on a female in violation of N.C. Gen. Stat. § 14-33(c)(2). The Government and Defendant agree that no record exists and that the clerk of court's file has

1

been purged.

On October 14, 2011, officers with the Charlotte Mecklenburg Police Department conducted an inspection of armed security guards at various night clubs in Charlotte, including Club Kalipzo located at 5920 N. Tryon Street. When the officers arrived, they observed Defendant and another male standing outside of Club Kalipzo. Both men wore black tactical gear and appeared to be working as security guards. Defendant was visibly armed with a firearm (a Sig Sauer .45 caliber handgun) in his tactical vest. Defendant was arrested by the officers and charged with working as an armed security guard without a license in violation of N.C. Gen. Stat. § 74C-13. As part of the arrest, the officers confiscated the handgun, a knife, and a black shotgun found in Defendant's vehicle. While the state charge was pending appeal from the district court to the superior court, a Federal grand jury returned an indictment charging Defendant with possession of a firearm after having been convicted of a misdemeanor crime of domestic violence in violation of 18 U.S.C. § 922(g)(9). A superseding indictment subsequently added a charge for violation of 18 U.S.C. § 922(a)(6) for making a false statement during the purchase of two firearms based on allegations that Defendant falsely represented that he had not been convicted of a misdemeanor crime of domestic violence on ATF Form 4473.

Defendant filed the instant motion in limine to seek a ruling on the three preliminary evidentiary matters identified above. The Government has responded, and this motion is now ripe.

## II. ANALYSIS

The crucial issue before this Court is whether North Carolina's crime of assault on a female is categorically a misdemeanor crime of violence under federal law. Pursuant to 18

2

U.S.C. § 922(g)(9), in relevant part, it is unlawful for a person who has been convicted in any court of a misdemeanor crime of domestic violence to possess any firearm that has been shipped in interstate commerce. For purposes of § 922(g)(9), the term "misdemeanor crime of domestic violence" is defined as follows:

> (A) [T]he term "misdemeanor crime of domestic violence" means an offense that—
> (i) is a misdemeanor under Federal, State, or Tribal law; and(ii) has, as an element, *the use or attempted use of physical force*, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabitating with or has cohabited with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim.

18 U.S.C. § 921(a)(33)(A)(emphasis added). Put simply, "physical force" is an essential and requisite element for an underlying conviction to satisfy the predicate offense for § 922(g)(9).

Because Defendant's underlying offense is assault on a female, the issue in the case at bar is whether North Carolina's crime of assault on a female has as an element the use or attempted use of physical force as that term is used in § 921(a)(33)(A)(ii).[1] The Fourth Circuit has

---

[1] The Court notes that the Government appears to rely only on the categorical approach in making its argument to this Court. The law concerning the categorical approach and the modified categorical approach is well-settled:

> "In assessing whether an offense constitutes [a] predicate offense, two types of analyses are potentially applicable-known as the 'categorical' approach and the 'modified categorical' approach." United States v. Harcum, 587 F.3d 219, 222 (4th Cir. 2009). The categorical approach requires us to analyze the offense "generically-that is, by relying solely on its essential elements, rather than on the particular underlying facts." United States v. White, 571 F.3d 365, 368 (4th Cir. 2009). "This categorical approach requires courts to choose the right category. And sometimes the choice is not obvious." Chambers v. United States, --- U.S. ----, 129 S.Ct. 687, 690, 172 L.Ed.2d 484 (2009). However, despite the Supreme Court's "preference for the categorical approach, that approach does not always reveal the nature of the asserted predicate offense encountered by a sentencing court." Harcum, 587 F.3d at 223. In those "narrow range of cases," Taylor, 495 U.S. at 602, 110 S.Ct. 2143, a "modified categorical approach" may be used.

White, 606 F.3d at 154 n. 5. As explained in the Supreme Court's opinion in Johnson:

3

explained:

> In United States v. White, 606 F.3d 144 (4th Cir. 2010), we held that the term "physical force," as used in § 921(a)(33)(A)(ii), means "force capable of causing physical pain or injury to another person." White, 606 F.3d at 153 (internal quotation marks omitted). Therefore, a "misdemeanor crime of domestic violence," for purposes of a § 922(g)(9) offense, is one in which the use or attempted use of force capable of causing physical pain or injury to another *or* the threatened use of a deadly weapon is an element of the offense.

United States v. Staten, 666 F.3d 154, 162 (4th Cir. 2011) (emphasis added), cert. denied, 132 S.Ct. 1937, 182 L. Ed. 2d 794 (U.S. 2012).

"Physical force," as that term in § 921(a)(33)(A)(ii) is interpreted under Supreme Court and Fourth Circuit precedent, requires more than mere touching without injury. In Staten, a case involving a constitutional challenge to § 922(g)(9), the court explained that the statutory definition of the term "misdemeanor crime of domestic violence" keeps the statute's prohibitory sweep narrow. The Staten case reiterated the rule that a "misdemeanor crime of domestic violence," for purposes of a § 922(g)(9) offense, "is one in which the use or attempted use of force capable of causing physical pain or injury to another or the threatened use of a deadly

---

"When the law under which the defendant has been convicted contains statutory phrases that cover several different generic crimes, some of which require violent force and some of which do not, the "'modified categorical approach'" that we have approved, Nijhawan v. Holder, 557 U.S. ----, -----, 129 S.Ct. 2294, 2302, 174 L.Ed.2d 22 (2009), permits a court to determine which statutory phrase was the basis for the conviction by consulting the trial record-including charging documents, plea agreements, transcripts of plea colloquies, findings of fact and conclusions of law from a bench trial, and jury instructions and verdict forms. See Chambers v. United States, 555 U.S. ----, ----, 129 S.Ct. 687, 691, 172 L.Ed.2d 484 (2009); Shepard, 544 U.S. at 26, 125 S.Ct. 1254; Taylor v. United States, 495 U.S. 575, 602, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990). Indeed, the Government has in the past obtained convictions under the Armed Career Criminal Act in precisely this manner. See, e.g., United States v. Simms, 441 F.3d 313, 316-317 (C.A.4 2006) (Maryland battery); cf. United States v. Robledo-Leyva, 307 Fed.Appx. 859, 862 (5th Cir.) (Florida battery), cert. denied, 558 U.S. ----, 130 S.Ct. 64, 175 L.Ed.2d 47; United States v. Luque-Barahona, 272 Fed.Appx. 521, 524-525 (7th Cir. 2008) (same).

Johnson, 130 S.Ct. at 1273.

weapon is an element of the offense." 666 F.3d at 162. Such definition inherently excluded certain conduct, and the Staten court stated, "§ 922(g)(9) does not apply to persons convicted of a misdemeanor for using or attempting to use force against a spouse which is incapable of causing physical pain or injury, such as an offensive touching in a common law battery." 666 F.3d at 163 (citing White, 606 F.3d at 153).

The White decision referenced in Staten expanded the holding of the recent Supreme Court case of Johnson v. United States, __ U.S. __, 130 S.Ct. 1265 (2010), where the high Court held that the phrase "physical force" as it is used in § 924(e)(2)(B) means "violent force." 606 F.3d at 153 (citing Johnson, 130 S. Ct. at 1271). Johnson declined to resolve the issue of whether "physical force" under § 924(e)(2)(B) had the same meaning as "physical force" under § 921(a)(33)(A) because "[t]he issue is not before us, so we do not decide it." 130 S.Ct. at 1273. Recognizing this outstanding issue, the Fourth Circuit in White adopted the same definition from Johnson for purposes of § 921(a)(33)(A)(ii). The White decision further interpreted Johnson as "reject[ing] the Government's argument that *de minimis* force, as in an offensive touching without injury in battery, could be construed as 'physical force.'" 606 F.3d at 152. The Fourth Circuit's opinion in White ultimately held that the crime under Virginia state law for "assault and battery against a family or household member" did not contain, as a required element, the use of "physical force." 606 F.3d at 154. The court also applied the modified categorical approach and concluded that the record was devoid of any qualifying documentation to show that the defendant's conviction under state law constituted a "misdemeanor crime of domestic violence." Id. at 156. The Fourth Circuit therefore reversed the defendant's conviction under § 922(g)(9) and vacated his sentence. Id.

5

Turning to the case at bar, North Carolina has codified punishment for the crime of assault on a female at N.C. Gen. Stat. § 14-33(c)(2); however, the elements of the crime are defined by common law. State v. Roberts, 155 S.E.2d 303, 305 (N.C. 1967) ("There is no statutory definition of assault in North Carolina, and the crime of assault is governed by common law rules. [N.C. Gen. Stat.] § 14-33 does not create a new offense as to assaults on a female, but only provides for different punishments for various types of assault.") (citations omitted)).

In determining whether North Carolina requires "physical force" in order to convict a person of assault on a female as that term has been defined in White, the Court considers common law definitions of the crime, as well as the facts of those cases upholding convictions of the crime. On one hand, North Carolina case law provides various definitions for assault on a female. This, in and of itself, proves problematic for determining, under the categorical approach, whether the conviction qualifies as the predicate offense under § 922(g)(9). In addition, North Carolina courts seem to permit a finding of mere touching—insufficient under White and Staten (and Johnson)—to support a conviction for assault on a female.

**A.      Common Law Elements for Assault on a Female**

The Government contends the elements for the state crime require both "force *and* violence," as opposed to simply "force *or* violence." Consequently, according to the Government, a conviction for assault on a female necessarily requires "physical force," including "violent force." Such a conclusion, however, is not so straightforward because North Carolina appellate courts—including the state Supreme Court—have set forth variations in their definition of assault on a female. In State v. Roberts, a case over four and a half decades old, the Supreme Court stated:

6

> This Court generally defines the common law offense of assault as an overt act or an attempt, or the unequivocal appearance of an attempt, with *force and violence*, to do some immediate physical injury to the person of another, which show of force or menace of violence must be sufficient to put a person of reasonable firmness in fear of immediate bodily harm.

155 S.E.2d at 305 (quotation omitted, collecting cases). Roberts further explained another avenue of proof that state courts had extended in order to convict for assault on a female.

> The decisions of the Court have, in effect, brought forth another rule known as the 'show of violence rule,' which places the emphasis on the reasonable apprehension of the person assailed. The 'show of violence rule' consists of a show of violence accompanied by reasonable apprehension of immediate bodily harm or injury on the part of the person assailed which causes him to engage in a course of conduct which he would not otherwise have followed. This rule has been extended to many cases of assault on a female. Thus, there are two rules under which a person may be prosecuted for assault in North Carolina.

155 S.E.2d at 305 (citation omitted). Under Roberts' summary of the common law rules for assault on a female, it appears that either "force *and* violence" are required or a "show of violence" can otherwise suffice if accompanied by a reasonable apprehension of immediate bodily harm or injury by the victim. While the distinction between the first and second options appears minimal, the Court, however, is unconvinced the second method requires actual force, much less "violent force . . . capable of causing physical pain or injury to another person" and "strong physical force." Johnson, 130 S.Ct. at 1271; see also State v. Artis, 384 S.E.2d 470, 494-95 (N.C. 1989) ("[T]here are two rules under which a person may be prosecuted for assault in North Carolina," State v. Roberts, 155 S.E.2d 303, 305 (N.C. 1967), and violence is an element of the offense under either rule.), cert. granted, judgment vacated sub nom, Artis v. N. Carolina, 494 U.S. 1023, 110 S. Ct. 1466, 108 L. Ed. 2d 604 (U.S. 1990).

To further complicate this issue, Roberts' own discussion of cases concerning assault on a female does not distinguish between proof of "force *and* violence" as opposed to "force *or*

7

violence." For example, Roberts quotes the holding from the North Carolina Supreme Court case of State v. Johnson, which lists "force *and* violence": "In order to constitute a criminal assault there must be an overt act or an attempt, or the unequivocal appearance of an attempt, with *force and violence*, to do some immediate physical injury to the person of another . . . ." State v. Johnson, 264 N.C. 598, 599, 142 S.E.2d 151, 153 (1965) (quoting 1 STRONG: N.C. INDEX, Assault and Battery, s. 4, p. 182 (Supp., p. 60)). But in the same sentence and same definition, the Johnson court's own statement appears to allow a finding of but one – either force *or* violence. The definition continues, "[W]hich show of force *or* menace of violence must be sufficient to put a man of reasonable firmness in fear of immediate bodily harm." Id. (emphasis added). Further down in Roberts' summation of case law, the court cites to the case of State v. Ingram, which involved an assault upon a female charge where the court said "in order to constitute the criminal offense of assault there must be an overt act or an attempt, or the unequivocal appearance of an attempt, with *force and violence*, to do some immediate physical injury to the person of another." State v. Ingram, 74 S.E.2d 532, 535 (N.C. 1953) (emphasis added). Muddying the waters even further, the Roberts opinion, in the paragraph immediately preceding the discussion on Johnson, 155 S.E.2d at 306, cites to the case of State v. Silver, 42 S.E.2d 208, 209 (N.C. 1947), a case that reversed a conviction of assault on a female because the conduct was unaccompanied by "violence, threats *or* any display of force."

Twenty years after Roberts, the North Carolina Supreme Court again reiterated, "The legal definition of an assault in the crime of assault on a female is 'an overt act or an attempt, or the unequivocal appearance of an attempt, with *force and violence*, to do some immediate physical injury to the person of another, which show of force *or* menace of violence must be

8

sufficient to put a person of reasonable firmness in fear of immediate bodily harm.'" State v. Wortham, 351 S.E.2d 294, 296 (N.C. 1987) (emphasis added) (quoting State v. Jeffries, 291 S.E.2d 859 (N.C. App.), disc. rev. denied and appeal dismissed, 294 S.E.2d 374 (N.C. 1982)).

Thus, it appears to be inconclusive under North Carolina law, including common law definitions from the North Carolina Supreme Court as stated in Johnson, Roberts, and Wortham, as to whether "force *and* violence" are both required for every conviction of the crime of assault on a female, which proves troublesome under the categorical approach.

Breaking down the elements for assault on a female, which the North Carolina appellate courts sometimes do, provides no clarity on this issue. In some instances, the state appellate courts have explained, ""The elements of assault on a female are (1) an assault, (2) upon a female person, (3) by a male person[,] (4) who is at least eighteen years old." State v. Herring, 370 S.E.2d 363, 370 (N.C. 1988); see also State v. Brown, 595 S.E.2d 238 (N.C. App. 2004). As in the definitions for assault on a female, the North Carolina appellate courts when defining "assault" are inconclusive as to whether a finding of "force *and* violence" or "force *or* violence" is required. Compare State v. Gilley, 522 S.E.2d 111, 117 (N.C. App. 1999) ("Assault is defined as 'an overt act or an attempt, or the unequivocal appearance of an attempt, with *force and violence*, to do some immediate physical injury to the person of another, which show of force or menace of violence must be sufficient to put a person of reasonable firmness in fear of immediate bodily harm.'") (quoting State v. Jeffries, 291 S.E.2d 859, 860–61 (N.C. App. 1982)), with State v. Holman, 380 S.E.2d 128, 130 (N.C. App. 1989) ("An assault is defined as 'an intentional offer or attempt by *force or violence* to do injury to the person of another.'") (quoting State v. Thompson, 219 S.E.2d 566, 568 (N.C. App. 1975), cert. denied, 220 S.E.2d 800 (N.C.

9

1976)).

The Court is not compelled to resolve this ambiguity among the variations of proof in North Carolina case law in favor of the Government's arguments to require a finding of "force *and* violence" because a look at yet another variation of proof—assault on a female based on battery—does not satisfy the "physical force" definition in White.

**B.	Assault on a Female Based on Battery**

The quagmire of alternative definitions for assault on a female is further highlighted in the more recent cases arising out of the North Carolina appellate courts, which seem to recognize proof of either force *or* violence, particularly in cases where a battery based on force alone, even if only slight, provides the basis for the "assault" element of the crime. In State v. West, the North Carolina Court of Appeals restated the common law rule:

> Assault on a female may be proven by finding either an assault on *or* a battery of the victim. State v. Britt, 270 N.C. 416, 418, 154 S.E.2d 519, 521 (1967). Assault is defined as "'an intentional attempt, by violence, to do injury to the person of another.'" Id. at 419, 154 S.E.2d at 521 (quoting State v. Davis, 23 N.C. 125 (1840)). Battery "is an assault whereby any force is applied, directly or indirectly, to the person of another." Id. at 418, 154 S.E.2d 519, 154 S.E.2d at 521 (citing State v. Sudderth, 184 N.C. 753, 755, 114 S.E. 828, 829 (1922)).

554 S.E.2d 837, 839-40 (N.C. App. 2001) (emphasis added) (upholding jury instructions defining assault as a battery using the term "touch" instead of "force").

In West, the court highlighted variations on the definition of battery including "the unlawful application of force to the person of another by the aggressor himself, or by some substance which he puts in motion," State v. Hefner, 155 S.E. 879 (N.C. 1930), and "an assault whereby any force, *however slight*, is actually applied to the person of another, directly or indirectly," State v. Sudderth, 114 S.E. 828, 829 (N.C. 1922)). West, 554 S.E.2d at 840

10

(emphasis added). The court also upheld "a further variation on the definition of battery" and concluded the usage of the word "touch" over the defendant's proposed word "force" in the definition of battery did not constitute error. Id. (noting that the defendant's proposed statement was a correct statement of the law) (citation omitted).

Other cases indicate that assaults on a female based on battery do not satisfy the definition of "physical force" nor do they require "use or attempted use of force capable of causing physical pain or injury." White, 606 F.3d at 153. In State v. Britt, the state supreme court recognized that indirect force could suffice to prove assault on a female. "A battery always includes an assault, and is an assault whereby any force is applied, directly or indirectly, to the person of another." State v. Britt, 154 S.E.2d 519, 521 (N.C. 1967) (citing State v. Sudderth, 114 S.E. 828 (N.C. 1922)). In State v. Williams, 667 S.E.2d 340 (N.C. App. 2008)(unpublished), the court of appeals explained:

> A battery is "the offensive touching of the person of another without his/her consent[.]" City of Greenville v. Haywood, 130 N.C. App. 271, 275, 502 S.E.2d 430, 433, disc. review denied, 349 N.C. 354, 525 S.E.2d 449 (1998). The State need not prove the victim was put in fear where there is evidence of an actual battery. State v. Thompson, 27 N.C. App. 576, 578, 219 S.E.2d 566, 568 (1975), cert. denied, 289 N.C. 141, 220 S.E.2d 800 (1976).

See also State v. Clay, 621 S.E.2d 343 (N.C. App. 2005) (unpublished) ("If a criminal defendant intentionally touches or applies force to another in a manner that is neither consensual nor privileged, that defendant has committed a battery and, necessarily then, an assault.").

Such a holding and potential basis for a conviction of assault on a female is indistinguishable from those cases rejected as satisfying a predicate offense for "misdemeanor crime of for domestic violence" explained in White. See also Johnson, 130 S.Ct. at 1270 (defining by ordinary meaning the word "force," and concluding "All of these definitions

11

suggest a power that would not be satisfied by the merest touching."). Thus, even if assault on a female based on an assault did require "force *and* violence," a charge for assault on a female where the assault is predicated on a battery still fails the "physical force" requirement.

The Court notes that the recent decision of Kelly v. Riley, et. al., 733 S.E.2d 194 (N.C. App. 2012), from the North Carolina Court of Appeals involving this Defendant, his conviction for assault on a female also at issue here, and North Carolina prohibitions on concealed handgun permits clearly indicates that Defendant was convicted of a "crime of violence," as that term is defined in North Carolina law, which prohibits him from obtaining a concealed handgun permit under state law. See N.C. Gen. Stat. § 14-415.12(b)(8). The recognition of this conviction as a "crime of violence" under Article 14 of the North Carolina General Statutes, is highly persuasive but minimally insufficient standing alone to establish a "misdemeanor crime of domestic violence" under federal law absent a clear statutory or common requirement that the conviction or specific "crime of violence" equate to "physical force" or "force capable of causing physical pain or injury to another person." See § 921(a)(33)(A)(ii); White, 606 F.3d at 153.

**C.     Summary**

Without a clear requirement under North Carolina common law of "force *and* violence" to be convicted of assault on a female and because it appears that North Carolina law will allow a conviction for assault on a female to stand based on a battery with touching, however slight, this Court cannot conclude under the categorical approach that the crime of assault on a female constitutes a misdemeanor crime of domestic violence. To decide otherwise would not only ignore precedent from White, as well as the persuasive discussion in Staten, but it would also be inconsistent with cases from other circuits concluding that a common-law, offensive-touching

12

battery statute does not require sufficient force to be a misdemeanor crime of domestic violence. United States v. Castleman, 695 F.3d 582, 587 (6th Cir. 2012) (collecting cases); see also United States v. Rice, 7:06-1093-HMH, 2007 WL 128889 (D.S.C. Jan. 16, 2007).

Moreover, this Court does not have the option of certifying this hazy issue of state law to the North Carolina Supreme Court. North Carolina is the sole state in the union that does not permit a federal court to certify questions of state law to the high state court for resolution. See Sharika Robinson, RIGHT, BUT FOR THE WRONG REASONS: HOW A CERTIFIED QUESTION TO THE SUPREME COURT OF NORTH CAROLINA COULD HAVE ALLEVIATED CONFLICTING VIEWS AND BROUGHT CLARITY TO NORTH CAROLINA STATE LAW, 34 N.C. Cent. L. Rev. 230 (2012) ("North Carolina is the only state that has never enacted a procedure by which a federal court could certify a question of state law to its state Supreme Court.") (citing Eric Eisenberg, A DIVINE COMITY: CERTIFICATION (AT LAST) IN NORTH CAROLINA, 58 Duke L.J. 69, 69 (2008)).

In addition, based on a consideration of the rule of lenity that normally applies in statutory construction, the Court is slightly swayed in favor of Defendant's interpretation of common law applicable to assault on a female, as opposed to a more strict interpretation of the few cases from the North Carolina Supreme Court, which, as explained above, do not clearly address the issue of whether "force and violence" is required. United States v. Santos, 553 U.S. 507, 514, 128 S. Ct. 2020, 2025, 170 L. Ed. 2d 912 (2008) ("The rule of lenity requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them."); see also Skilling v. United States, 130 S. Ct. 2896, 2932, 177 L. Ed. 2d 619 (2010) (noting "the familiar principle that ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity") (citation omitted).

Roberts appropriately summarized the dilemma now before this Court when it said, "'The rules of law in respect to assaults are plain, but their application to the facts is sometimes fraught with difficulty. Each case must depend upon its own peculiar circumstances.'" 155 S.E.2d at 305 (quoting State v. Allen, 95 S.E.2d 526 (N.C. 1956)). Therein lies the difficulty of concluding that assault on a female under North Carolina law is a misdemeanor crime of domestic violence under the categorical approach.

**D.     Modified Categorical Approach**

Finally, and although neither party has addressed the issue, because the Court has construed Defendant's motion as a motion to dismiss, the Court provides a brief discussion on whether any basis exists to support the charge under § 922(g)(9). The parties agree that no record of conviction exists in this case. A police/incident report is the sole document available to the parties. Defendant argues that the police report related to the underlying crime of assault on a female cannot be admitted pursuant to Shepard v. United States, 544 U.S. 13 (2005). In Shepard, the United States Supreme Court held that for purposes of determining whether a predicate offense qualifies under the Armed Career Criminal Act as a sentence enhancement, the court's inquiry "is limited to the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." 544 U.S. at 26. The Government concedes that the incident report is not a "Shepard-approved" document. (Doc. No. 22, p. 15). The Court's ruling here requires application of the modified categorical approach because, although the Court knows the specific state statute applicable to Defendant's conviction, the Court cannot look simply to the fact of conviction and the definition

14

of the offense to determine whether the conviction was based on an offensive touching or the use of "physical force." Because the sole document in the record providing insight into the facts of the conviction is not admissible under Shepard, the Court finds that the modified categorical approach in the instant case also fails to demonstrate that Defendant's conviction for assault on a female satisfies the requirements for a predicate offense under § 922(g)(9). Should the Government have other evidence admissible under Shepard, the Court will entertain a motion for reconsideration on this issue.

### III. CONCLUSION

For the reasons stated herein, Defendant's prior state conviction for assault on a female does not qualify as a misdemeanor crime of domestic violence pursuant to 18 U.S.C. § 922(g)(9). Accordingly, Defendant's motion, as converted to a motion to dismiss Count One of the Indictment, is GRANTED. Defendant's motion is DENIED AS MOOT as to all other aspects.

IT IS SO ORDERED.

Signed: January 4, 2013

Frank D. Whitney
United States District Judge